UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PETER GEORGACARAKOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 11-1655 (JDB) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendants' motion for summary judgment. For the reasons discussed below, the motion will be granted.

I. BACKGROUND

In November 1996, while incarcerated at the Lewisburg United States Penitentiary, plaintiff stabbed and killed another inmate, Randall Scott Anderson. *See United States v. Georgacarakos*, 138 F. App'x 407, 408 (3d Cir. 2005). A jury convicted plaintiff of second degree murder, and the court has imposed a 30-year prison sentence. Compl. at 1.[1] According to plaintiff, "at worst [he is] guilty of manslaughter," *id.*, and reports of the investigation collected by the Federal Bureau of Investigation ("FBI") allegedly "contain exculpatory evidence previously withheld" from him, *id.* at 2.

---

[1] "On June 21, 2005, the United States Court of Appeals for the Third Circuit affirmed the conviction but vacated the sentence, and remanded proceedings for further consideration." *United States v. Georgacarakos*, No. 4:cr-02-034, 2006 WL 485983, at *1 (M.D. Pa. Feb. 20, 2006), *aff'd*, 229 F. App'x 189, 190 (3d Cir. 2007). Plaintiff's sentence was reduced from life imprisonment to 360 months. *See Georgacarakos*, 229 F. App'x at 191.

1

Plaintiff submitted a request to the FBI under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, for "copies of all 302's related to the investigation in the death of Randall Anderson, for which [plaintiff] was prosecuted." Defs.' Mem. of P. & A. in Supp. of their Mot. for Summ. J. ("Defs.' Mem."), Decl. of David M. Hardy ("Hardy Decl."), Ex. A (Letter from plaintiff to FBI dated March 18, 2010).[2] The FBI assigned the request a tracking number (FOIPA No. 1145866-000) and acknowledged its receipt in writing. Hardy Decl., Ex. B (Letter from David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, to plaintiff dated April 6, 2010). The FBI's search yielded 256 pages of responsive records, of which 237 pages were released in full or in part, and 19 pages were withheld in full. *Id.*, Ex. C (Letter from D.M. Hardy to plaintiff dated January 14, 2011). Plaintiff pursued an administrative appeal to the Justice Department's Office of Information Policy ("OIP"), *id.*, Ex. F (Letter from plaintiff to OIP dated February 9, 2011), and met with partial success in the form of a remand with respect to the 19 pages of records withheld in full, *id.*, Ex. H (Letter from Janice Galli McLeod, Associate Director, OIP, to plaintiff dated July 29, 2011) at 1, resulting in the partial disclosure of these pages, *id.*, Ex. I (Letter from D.M. Hardy to plaintiff dated November 14, 2011). The FBI's determination was affirmed in all other respects. *See id.*, Ex. H at 1.

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material

---

[2]  An "FD-302 is an internal FBI form on which the results of FBI interviews are recorded." Defs.' Mem., Hardy Dec. ¶ 5 n.1.

fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a FOIA action to compel production of records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 182 (D.D.C. 2011).

### B. The FBI's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request,

but rather whether the search for those documents was adequate." *Weisberg*, 705 F.2d at 1351 (citing *Perry*, 684 F.2d at 128).

The FBI's Central Records System ("CRS") maintains "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." Hardy Decl. ¶ 16. Its "numerical sequence of files [is] broken down according to subject matter," and the subject matter "may relate to an individual, organization, company, publication, activity, or foreign intelligence matter (or program)." *Id.* "Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order." *Id.* ¶ 17. "The General Indices consist of index cards on various subject matters that are searched either manually or through the automatic indices." *Id.* Entries in the General Indices are either "main" or "reference" entries. *Id.* A "'main' entry . . . carries the name corresponding [to] a subject of a file contained in the CRS," *id.* ¶ 17(a), and a reference entry (or cross-reference) "is generally only a mere mention . . . of an individual, organization, or other subject matter, contained in a document located in another 'main' file on a different subject matter," *id.* ¶ 17(b).

In order to search the CRS, one uses the Automated Case Support System ("ACS"), implemented in 1995 to "facilitate[] more . . . expeditious access to records maintained in the CRS." *Id.* ¶ 19. There are "three integrated, yet separately functional, automatic applications" within the ACS: Investigative Case Management (ICM), Electronic Case File (ECF), and Universal Index (UNI). *Id.* ¶ 20. ICM allows for the opening, assignment, and closing of investigative cases, and for setting, assigning, and tracking leads. *Id.* ¶ 20(a). Each new case is assigned a Universal Case File Number which includes a three-digit number representing the type of investigation, a two-letter code representing the office of origin, and a five-digit number for the particular investigation. *Id.* ECF is "the central electronic repository for the FBI's

official text-based documents." *Id.* ¶ 20(b). UNI "provid[es] a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 20(c). "Names of individuals or organizations are recorded with identifying . . . information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event" also recorded. *Id.* Generally, the Special Agent to whom an investigation is assigned decides whether to index an individual's name; only "information considered to be pertinent, relevant, or essential for future retrieval" is indexed. *Id.* ¶ 21. Without an index, "information essential to ongoing investigations could not be readily retrieved," and, therefore, "the General Indices to the CRS files are the means by which the FBI . . . determine[s] what retrievable information, if any, [it has] in its CRS files on a particular subject matter or individual, i.e. Peter N. Georgacarakos." *Id.*

"The FBI conducted a search of the CRS for records responsive to plaintiff's request by running searches using ACS." *Id.* ¶ 22. Using variations of plaintiff's name as search terms, the search yielded "one responsive main file, 90A-PH-80620, which pertains to the investigation of the Anderson murder." *Id.* Because plaintiff "sought access to 'all 302s' relating to the murder investigation," FBI staff "identified and processed all 302s in the case file." *Id.*

On review of the motion and supporting declaration, and absent any challenge by plaintiff to the agency's search, the Court concludes that the FBI's search for records responsive to plaintiff's request for "FD-302s" pertaining to the Anderson murder investigation was reasonable under the circumstances.

### C. Exemption Claims

#### 1. Exemption 3

Exemption 3 covers records that are "specifically exempted from disclosure by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to

5

particular types of matters to be withheld."  5 U.S.C. § 552 (b)(3); *see also Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).  Rule 6 of the Federal Rules of Criminal Procedure, which is considered a statute for purposes of Exemption 3 because Congress affirmatively enacted it, *see Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,* 656 F.2d 856, 867-68 (D.C. Cir. 1981), prohibits disclosure of "matters occurring before [a] grand jury."  Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998).

Under Exemption 3, the FBI withholds "details concerning a Federal Grand Jury subpoena, including the name and identifying information of an individual subject to a . . . subpoena and information that identifies specific records or evidence subpoenaed by the Federal Grand Jury."  Hardy Decl. ¶ 29.  Here, the declarant explains that disclosure of these materials "would clearly reveal the subject of the investigation as well as a specific aspect of the Grand Jury's investigation into a prison murder, thereby revealing the secret inner workings of the Federal Grand Jury that considered the case."  *Id.*  Plaintiff responds that he neither has requested nor desires "personal information about anybody."  Pl.'s Resp. to Mot. for Summ. J. ("Pl.'s Opp'n") at 2.  Instead, he dismisses as "superfluous and irrelevant" the declarant's discussion of Exemption 3, opining that it is "obviously included [for] the sole purpose of inveigling."  *Id.*

Based on defendant's submission, the Court concludes that the information withheld under Exemption 3, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."

*Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582. It is properly withheld under Exemption 3.

2. Exemption 7[3]

a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such information would cause an enumerated harm, *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The FBI's declarant describes plaintiff's criminal history as follows:

> In the mid-1990s, while serving a 260-month sentence in the Lewisburg, Pennsylvania federal prison on a 1992 federal drug conviction, plaintiff formed the White Order of Thule, a white supremacist organization. On November 7, 1996[,] plaintiff and another inmate brutally stabbed to death a third inmate, Randall

---

[3] Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It is the practice of the FBI to invoke Exemption 6 in conjunction with Exemption 7(C) to protect the personal privacy interests of third parties mentioned in the responsive records. Hardy Decl. ¶ 32 n.6; *see id.* ¶¶ 34, 37, 39, 41-42. As is discussed below, all the information pertaining to third parties who (1) provided information to the FBI or to other law enforcement officers, (2) were of investigative interest, (3) were FBI Special Agents themselves, or (4) were merely mentioned in the records at issue, *see id.* ¶ 27 (Summary of Justification Categories), properly is withheld under Exemption 7(C). The Court therefore need not address the applicability of Exemption 6 with respect to the same information. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992); *Marshall v. Fed. Bureau of Investigation*, 802 F. Supp. 2d 125, 134 (D.D.C. 2011).

> Scott Anderson. Anderson, who was white, had been serving a sentence for the racially-motivated bombing of a roller-skating rink and for defacing a synagogue. Anderson apologized to the Court and while in prison, and a few days before his murder, converted to Islam. Three days later, a second Lewisburg inmate, Perry York, was murdered – allegedly in retaliation for the Anderson murder.

Hardy Decl. ¶ 15. The FBI investigated both murders, and its "Philadelphia Field Office opened the Anderson investigation case under file number 90A-PH-80620." *Id.*; *see id.* ¶ 31. The documents plaintiff requested (FD-302s) were "contained in investigative main file 90A-PH-80620 [and] were generated pursuant to the law enforcement duties of the FBI" in conducting the investigation of "plaintiff for a murder in a federal prison in violation of 18 U.S.C. § 1111 and 1112." *Id.* ¶ 31; *see id.* ¶ 22. Plaintiff objects to the declarant's "allegation that [he] is a 'white supremacist,'" Pl.'s Opp'n at 1, but he does not challenge the FBI's representation that the records at issue were compiled for law enforcement purposes, *see generally id*. The Court concludes that the records responsive to plaintiff's FOIA request are law enforcement records within the scope of Exemption 7.

b. Exemptions 7(C) and 7(D)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the privacy interests of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115

(D.C. Cir. 2007). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

Under Exemption 7(C) the FBI has withheld the names and identifying information of "dozens of individuals," most of whom were inmates, "interviewed by the FBI during the course of the Randall Anderson murder investigation," Hardy Decl. ¶ 34, "Federal Bureau of Prisons special investigative agents, guards, a probation officer, and Assistant U.S. Attorney, and a federal public defender," *id*. ¶ 37, third parties "of investigative interest to the FBI," *id.* ¶ 39, FBI Special Agents who conducted, supervised, or maintained the activities reported in the responsive records, *id.* ¶ 41, and "third parties merely mentioned in the FD-302s created in connection with the . . . murder investigation, *id.* ¶ 42. In no circumstance does the declarant identify a public interest sufficient to outweigh the recognized privacy interests of these third parties. *See id.* ¶ 33.

Exemption 7(D) protects from disclosure the records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

9

5 U.S.C. § 552(b)(7)(D).  "A source is confidential within the meaning of [E]xemption 7(D) if

the source provided information under an express assurance of confidentiality or in

circumstances from which such an assurance could be reasonably inferred."  *Williams v. Fed.*

*Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and

citation omitted).  "[E]xpress confidentiality is relatively easy to spot," *Brown v. Fed. Bureau of*

*Investigation*, __ F. Supp. 2d __, __, 2012 WL 2786292, at *12 (D.D.C. July 10, 2012), and may

be shown by "notations on the face of the withheld document."  *Campbell v. U.S. Dep't of*

*Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998).  Confidentiality may be inferred in circumstances such

as those arising from the Anderson murder investigation.  *See Holt v. U.S. Dep't of Justice*, 734

F. Supp. 2d 28, 45 (D.D.C. 2010) (withholding information provided by eyewitnesses to murder

for which requester was prosecuted ); *see also Parton v. U.S. Dep't of Justice*, 727 F.2d 774,

776-77 (8th Cir. 1984) (withholding under Exemption 7(D) identities of prison officials and

inmates interviewed by FBI agents conducting investigation of complaint brought by requester

who allegedly was beaten and abused by prison officials, noting that through disclosure of prison

officials' identities "not only could future investigations be hindered, but, there is a high

probability of reprisal for those who chose to cooperate in the investigation").

      Here, the FBI withholds under Exemption 7(D) "the identities of, and information

received from, individuals who provided information to the FBI during the course of the Randall

Anderson murder investigation . . . under circumstances from which an assurance of

confidentiality may be implied."  Hardy Decl. ¶ 47.  The topics of the interviews include the

murder itself as well as the events leading to and following after the murder, which is described

as "an extremely violent stabbing of a prison inmate by other inmates" and was "likely motivated

by prison affiliations."  *Id.*  Also withheld under Exemption 7(D) are the name of, identifying

data about, and information provided by a third party to whom the FBI expressly granted confidentiality by promising him that neither his identity nor the information he provided would be disclosed, and by inserting the term '"Protect Identity' in the body of the FD-302." *Id.* ¶ 48.

The Court construes plaintiff's opposition as a challenge to the withholding of information under both Exemption 7(C) and Exemption 7(D). Plaintiff disclaims any interest in "personal information . . . about anybody," Pl.'s Opp'n at 2, and he characterizes his FOIA request as one for "simply the witness statements of hundreds of federal prisoners from over 15 years ago," *id.* at 3. He argues that information can be withheld under Exemption 7(C) "only when revelation 'could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* at 2-3 (citing *Reporters Comm.*, 489 U.S. at 769). With respect to Exemption 7(D), plaintiff argues that "'confidential sources', not generalized information," is exempt from disclosure, *id.* at 3. In other words, "[w]ho the witness is, not what that witness observed and reported, is protected." *Id.* at 3 (emphasis in original). Plaintiff claims that "the FBI's sweeping redaction of every single relevant fact defies 'common sense and probability.'" *Id.* In plaintiff's view, the FBI acts in "bad faith" by "pretending that [he] can magically identify hundreds of witnesses simply by reading the content of reports made to the FBI in 1996." *Id.* at 4. Plaintiff's arguments, however, are meritless.

The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Plaintiff neither articulates a public interest nor provides any support for his assertion of agency bad faith. *See Boyd v. Crim. Div. of the U.S. Dep't of Justice*,

11

475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)) ("If the public interest is government wrongdoing, then the requester must 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'"). And once a source's confidentiality is determined, "almost nothing can eviscerate Exemption 7(D) protection." *Reiter v. Drug Enforcement Admin.,* No. 96-0378, 1997 WL 470108, at *6 (D.D.C. Aug. 13, 1997), *aff'd,* No. 97-5246, 1998 WL 202247 (D.C. Cir. Mar. 3, 1998). Exemption 7(D) permits the FBI to withhold not only the source's identity but also the information provided by that source. *See Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991). The Court concludes, therefore, that the FBI properly has withheld the names of, identifying information about, and information provided by third parties under Exemptions 7(C) and 7(D).

### D. Segregability

FOIA requires that "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Stated differently, all "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). "So important is this requirement that '[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.'" *Elec. Frontier Found. v. Dep't of Justice,* 826 F. Supp. 2d 157, 173 (D.D.C. 2011) (quoting *Sussman,* 494 F.3d at 1106)).

The FBI's declarant avers that "no reasonably segregable, nonexempt portions" of any responsive records were withheld. Hardy Decl. ¶ 50. Based on the declaration and the Court's review of the documents released to plaintiff, *see id.*, Ex. J, the Court finds that the agency has

redacted only what was necessary to protect the exempt information and has explained the basis for the redactions. Accordingly, the Court finds that all segregable information has been disclosed to plaintiff.

### III.  CONCLUSION

The Court concludes that the FBI has conducted an adequate search for records responsive to plaintiff's FOIA request and has released all non-exempt information. Its motion for summary judgment will be granted. An Order accompanies this Memorandum Opinion.


DATE:  December 12, 2012                    /s/
                                            JOHN D. BATES
                                            United States District Judge